UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| RICHARD ALLEN DIXON, JR.,<br><br>    Plaintiff,<br><br>vs.<br><br>DALTON GROEGER,<br><br>    Defendant | Civil No. 16-00178-NT |

### DEFENDANT'S MOTION TO DISMISS, WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7, Defendant Dalton Groeger[1] hereby requests that the Court dismiss with prejudice all claims in Plaintiff Richard Allen Dixon, Jr.'s Amended Complaint.  The Amended Complaint does not include any well-pleaded factual allegations to support a claim against Officer Groeger for alleged violations of his constitutional rights. Based on the pleading standards in federal court, Officer Groeger is entitled to dismissal with prejudice.

### I. ALLEGATIONS IN THE COMPLAINT

According to the allegations in the Amended Complaint, Mr. Dixon was held at the York County Jail from at least July 25, 2015 to September 11, 2015. (Amended Complaint ¶¶ 6-18). Mr. Dixon alleges that on August 30, 2015, Officer "John Doe" let an inmate into his cell. (Amended Complaint ¶¶ 7-8). Mr. Dixon further alleges that the

---

[1] Plaintiff Richard Allen Dixon, Jr. refers obliquely to Officer Groeger in his Amended Complaint (a corrections officer … whose name is beleaved (sic) to be Officer Greger (sic)"), generally preferring the sobriquet Officer "John Doe" when setting forth his allegations. Since the Amended Complaint is legally insufficient, it matters little whether Officer Groeger is Officer "John Doe." However, by filing this Motion to Dismiss, Officer Groeger does not admit that he is the Officer "John Doe" referenced in the Amendment Complaint.

other inmate threatened Mr. Dixon with a sharpened pencil, slapped Mr. Dixon, and verbally threatened Mr. Dixon with harm if he did not "shut his mouth." (Amended Complaint ¶¶ 9-11). Mr. Dixon alleges that Officer "John Doe" stood at Mr. Dixon's cell door while the other inmate was in Mr. Dixon's cell and that Officer "John Doe" did nothing to stop the other inmate. (Amended Complaint ¶¶ 12-13).

Mr. Dixon alleges that he filed an inmate grievance against Officer "John Doe" on September 1, 2015 pertaining to the event with the other inmate. (Amended Complaint ¶ 14). Mr. Dixon alleges that Officer "John Doe" came to his cell on September 8, 2015, that the officer "confronted" Mr. Dixon about the grievance, and that the officer left Mr. Dixon's cell after several requests by Mr. Dixon for him to leave. (Amended Complaint ¶¶ 15-16). Mr. Dixon alleges that he filed another inmate grievance against Officer "John Doe" on September 11, 2015 pertaining to the incident on September 8. (Amended Complaint ¶ 18).

Mr. Dixon seeks damages pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights and his First Amendment rights. (Amended Complaint ¶ 1).

## II. STANDARD OF REVIEW

The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The United States Supreme Court has recently elaborated on this standard:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Id.* (quoting *Twombly*, 550 U.S. at 555 and 557).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Gomes v. Univ. of Me. Sys.*, 304 F. Supp. 2d 117, 120 (D. Me. 2004). While the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor, this tenet is inapplicable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has therefore summarized the Rule 12(b)(6) test as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*Iqbal*, 556 U.S. at 678.

### III.  ARGUMENT

**THE PLAINTIFF HAS FAILED TO STATE ANY PLAUSIBLE CLAIMS UNDER THE FIRST OR EIGHTH AMENDMENTS.**

Mr. Dixon's constitutional claims seeking damages implicate 42 U.S.C. § 1983. Pursuant to Section 1983, a claim for relief may be asserted only against those persons

who, "under color of law," act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. 42 U.S.C. § 1983; *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 402-03 (1997) (citing and quoting Section 1983). The United States Court of Appeals for the First Circuit has elaborated on this standard:

> In assessing the imposition of liability under section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." There are two aspects to this second inquiry: "(1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation."

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted) (emphasis in original). The United States Supreme Court has emphasized that Section 1983 "is not itself a source of substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 389-94 (1989) (citation omitted).

An inmate who is attacked by a fellow inmate may state an Eighth Amendment claim against a prison official for failing to afford adequate protection if the inmate shows that (i) he suffered an objectively serious deprivation and (ii) the defendant knew of and disregarded a substantial risk of serious harm. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Alleged deprivations that do not deny an inmate "'the minimal civilized measure of life's necessities'" do not meet the objective component of the Supreme Court's Eighth Amendment test. *Id.* (quoting *Rhodes* v. *Chapman*, 452 U.S. 337, 349 (1981)). "For a claim (like the one here) based on a failure to prevent harm, the inmate

4

must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling* v. *McKinney* 509 U.S. 25, 35 (1993)).

The subjective component of the Eighth Amendment test turns on the deliberate indifference of the alleged governmental actor. *Id.* According to Supreme Court precedent, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Mr. Dixon's Amended Complaint does not state a plausible claim against Officer Groeger. Mr. Dixon appears to allege that Officer "John Doe" violated the Eighth Amendment by failing to intervene in a brief altercation between Mr. Dixon and another inmate. Mr. Dixon's allegations in support of that theory do not satisfy the objective component of the Eighth Amendment analysis. At best, Mr. Dixon alleges that the inmate who entered his cell slapped him once and threatened him with words and by brandishing a sharpened pencil. While these events, if true, might have been upsetting to Mr. Dixon, they do not reflect deprivation of the minimal civilized measure of life's necessities.

Moreover, assuming Officer Groeger is the Officer "John Doe" referenced in the Amended Complaint, his alleged conduct as part of this altercation does not meet the test for deliberate indifference. Mr. Dixon does not allege that Officer Groeger knew of the other inmate's plan to threaten him or slap him or that the officer in fact perceived any risk of substantial harm that might exist by admitting the other inmate. In fact, the Amended Complaint does not suggest that there was any history between Mr. Dixon and

the other inmate that would have indicated any potential risk, nor does it allege that Officer Groeger had any knowledge of such a history. Similarly, Mr. Dixon does not allege that Officer Groeger observed the other inmate slap Mr. Dixon or threaten Mr. Dixon verbally or with a pencil – he merely alleges that Officer "John Doe" "stood at the plaintiff's cell door." Finally, Mr. Dixon does not allege that, once underway, the altercation lasted long enough for Officer Groeger to take any action to intercede on Mr. Dixon's behalf – particularly since the only alleged contact was a single slap. The Amended Complaint does not state a plausible Eighth Amendment claim.

Although Mr. Dixon also invokes the First Amendment, there are no factual allegations in support of such a claim. While Mr. Dixon does not clearly state how he believes his First Amendment rights were violated, there is an allusion to retaliation for petitioning the government for redress of grievances. If this is Mr. Dixon's claim, it is measured against a familiar standard:

> To prove a retaliation claim at summary judgment, "a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." [*Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011)]. In the first amendment context, an adverse action must be "more than de minimis," which means the action must be sufficient to chill a person of ordinary firmness in the performance of future first amendment activities. *Pope v. Bernard*, No. 10-1443, 2011 U.S. App. LEXIS 2764, at *4, 2011 WL 478055, at *2 (1st Cir. 2011) (per curiam) (unpublished). The inquiry into whether an action is sufficiently adverse to support a claim is based on an objective standard rather than a subjective one, such that it is "capable of screening the most trivial of actions from constitutional cognizance." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). ... Acts that cause an inmate to experience discomfort for a few days are considered de minimis. *Starr v. Dube*, 334 Fed. Appx. 341, 342 (1st Cir. 2009). Along the same lines, "[v]erbal threats and name-calling usually are not actionable" under 42 U.S.C. § 1983. *Ellis v. Meade*, 887 F. Supp. 324, 329 (D. Me. 1995) (quoting *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)).

6

*Goguen v. Gilblair*, 2013 U.S. Dist. LEXIS 138500, *68-69 (D. Me. June 20, 2013), *aff'd* 2013 U.S. Dist. LEXIS 137410, 2013 WL 5407225 (D. Me. Sept. 25, 2013).

Assuming Mr. Dixon exercised his First Amendment right to petition the Jail for redress of grievances, the Amended Complaint does not suggest any retaliation by Officer Groeger as a result. Even if the Court credits Mr. Dixon's allegation that Officer Groeger "confronted" Mr. Dixon about a grievance Mr. Dixon had filed, he does not allege that this confrontation resulted in any adverse consequence for Mr. Dixon or that it in any way impeded his ability to seek redress of grievances. To the contrary, Mr. Dixon alleges that as the result of the "confrontation," he filed yet another grievance. Therefore, at most Mr. Dixon describes a *de minimis* action by Officer Groeger. Absent any alleged action sufficient to chill a person of ordinary firmness in the performance of future First Amendment activities, Mr. Dixon does not state a viable retaliation claim.

## IV.   CONCLUSION

For the reasons set forth above, Mr. Dixon has not pled plausible claims against Officer Groeger and his Amended Complaint should be dismissed with prejudice in its entirety.

Dated at Portland, Maine this 27th day of June, 2016.

                                    Attorneys for Defendant
                                    MONAGHAN LEAHY, LLP
                                    95 Exchange Street, P.O. Box 7046
                                    Portland, ME 04112-7046
                                    (207) 774-3906

                BY:    /s/ John J. Wall, III
                                    John J. Wall, III

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 27, 2016 I electronically filed **Defendant's Motion to Dismiss, With Incorporated Memorandum of Law** using the CM/ECF system. In addition, I hereby certify that I have served a copy of this document on the Plaintiff by first class mail, postage prepaid, to the following address:

      Richard Dixon, Jr.
      MDOC# 51584
      Maine Correctional Center
      17 Mallison Falls Road
      Windham, ME 04062

Dated at Portland, Maine this 27th day of June, 2016.

                            Attorneys for Defendant
                            MONAGHAN LEAHY, LLP
                            95 Exchange Street, P.O. Box 7046
                            Portland, ME 04112-7046
                            (207) 774-3906

BY:    /s/ John J. Wall, III
           John J. Wall, III