UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

RICHARD ALLEN DIXON, JR.,

      Plaintiff,

    vs.

DALTON GROEGER,

      Defendant

Civil No. 16-00178-NT

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7, Defendant Dalton Groeger hereby moves for summary judgment on all claims in Plaintiff Richard Allen Dixon, Jr.'s Amended Complaint. Based upon the undisputed facts taken in the light most favorable to Plaintiff, Plaintiff cannot make out viable claims for any constitutional violations against Mr. Groeger. In addition, Mr. Groeger is protected from liability for his actions by qualified immunity. For these reasons, all of which are discussed below, Mr. Groeger is entitled to summary judgment on Plaintiff's Amended Complaint.

## BACKGROUND

### I.    Facts

The factual background for the Motion for Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

### II.    Procedural Posture

The Plaintiff commenced this action in the United States District Court for the District of Maine by a Complaint dated March 30, 2016. The original Complaint appears to assert two claims against Mr. Groeger: violation of 42 U.S.C. § 1983 alleging cruel and unusual punishment in violation of the Eighth Amendment; and retaliation for petitioning

government for redress of grievance in violation of the First Amendment.  On June 27, 2016, Mr. Groeger filed a Motion to Dismiss the Complaint based on Plaintiff's failure to file any well-pleaded factual allegations to support claims against Mr. Groeger for alleged violations of his constitutional rights. In response, Plaintiff filed an Opposition to Defendant's Motion to Dismiss as well as a Motion to Amend his Complaint, adding several allegations that were not included in the original Complaint, but without asserting any new claims.

By an order dated August 29, 2016, the Magistrate Judge granted Plaintiff's Motion to Amend and recommended that the Court deny Defendant's Motion to Dismiss. Plaintiff failed to file an Amended Complaint with his Motion to Amend, so the Court allowed the allegations in the Motion to Amend to supplement Plaintiff's original Complaint, thereby making both filings the operative pleadings in this case ("hereafter 'Amended Complaint'"). Defendant's Motion to Dismiss was ultimately denied and he subsequently filed an Answer and asserted multiple affirmative defenses. Defendant Groeger now moves for Summary Judgment on Plaintiff's "Amended Complaint."

## THE SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(c), summary judgment must be granted in favor of the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In construing Rule 56(c), the United States Court of Appeals for the First Circuit has stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect *brevis* disposition."
> .....

> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . .  "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." . . . This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion."

*Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted) (cited in *Halasz v. University of New England,* 816 F. Supp. 37, 38-39 (D.Me. 1993)).

The United States Supreme Court has emphasized that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## ARGUMENT

**I.  THE PLAINTIFF'S CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT BECAUSE THEY EITHER FAIL ON THEIR MERITS OR MR. GROEGER IS PROTECTED BY QUALIFIED IMMUNITY.**

Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that his federal constitutional rights were violated as a result of an incident with Mr. Groeger on August 30, 2015. Plaintiff's Amended Complaint references violations of his First and Eighth Amendment rights. Specifically, Plaintiff contends that Mr. Groeger violated his Eighth Amendment rights by inflicting cruel and unusual punishment against him and violated his First Amendment rights by retaliating against him for petitioning government redress of grievance in violation of the freedom of speech clause. (Compl. ¶ 1).

> **A. Mr. Dixon's claim of cruel and unusual punishment in violation of his Eighth Amendment rights fails because – even taken in the light most**

3

**favorable to the Plaintiff – the facts do not substantiate a viable Eighth Amendment claim.**

Mr. Dixon's constitutional claims seeking damages implicate 42 U.S.C. § 1983. Pursuant to Section 1983, a claim for relief may be asserted only against those persons who, "under color of law," act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. 42 U.S.C. § 1983; *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 402-03 (1997) (citing and quoting Section 1983). The United States Court of Appeals for the First Circuit has elaborated on this standard:

> In assessing the imposition of liability under section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." There are two aspects to this second inquiry: "(1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation."

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted) (emphasis in original). The United States Supreme Court has emphasized that Section 1983 "is not itself a source of substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 389-94 (1989) (citation omitted).

The determination as to whether Plaintiff was a pretrial detainee or post-conviction prisoner is crucial to establishing whether Plaintiff's claim is analyzed under the Eighth or Fourteenth Amendment. "The state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977). The question becomes whether from July 25, 2015, when Plaintiff was detained for allegedly violating his probation, to September 18, 2015, when Plaintiff admitted to the probation

4

violation, Plaintiff was a pretrial detainee or a convicted prisoner – and more specifically, whether Plaintiff's prior conviction is considered a formal adjudication of guilt.

In the present case, even though Plaintiff had been convicted of the underlying offense related to his probation violation, at the time of his detention at the York County Jail he was awaiting his probation revocation hearing, which was not fully adjudicated until September 19, 2015. As such, and consistent with precedent, it appears that Plaintiff was a pretrial detainee while held at the York County Jail and therefore could not be punished under the Eighth Amendment. *See Gary v. Modena*, 2006 U.S. App. LEXIS 31640, 2006 WL 3741364, at *3 (11th Cir. 2006)(unpublished)(Butts was a person arrested for violation of probation and the court stated that "[s]ince Butts was a pre-trial detainee at the time of alleged violations, Gary's deliberate indifference claims fall under the due process clause of the Fourteenth Amendment and not the cruel and unusual punishment prohibition of the Eight [sic] Amendment."); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001)("Although the state had already 'secured a formal adjudication of guilt' for the crime underlying Brown's probation, it had not yet secured 'a formal adjudication' that Brown had violated his probation and should be returned to state custody. And, if Brown was a pretrial detainee rather than a convicted prisoner, [*11] then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to detainees who require it.'"); *Russell v. Lazar*, 300 F.Supp.2d 716, 720 (E.D.Wis. 2004)("Jones did not involve a convicted prisoner but rather someone arrested on a bench warrant and held on a detainer and alleged probation violation. The Due Process Clause rather than the Eighth Amendment applies to § 1983 claims brought by pre-trial detainees.").  Plaintiff's status as a pretrial detainee precludes him from bringing forth a viable Eighth Amendment claim.

5

**B. Even if the Court allowed Mr. Dixon's improperly pled claim to proceed as a Fourteenth Amendment claim, Plaintiff fails to establish facts sufficient to support a viable Fourteenth Amendment violation.**

If the Court takes the charitable route and allows Plaintiff's Eighth Amendment claim to proceed as a Fourteenth Amendment claim, his claim still fails. Viewed in the context of the Fourteenth Amendment rather than the Eighth, it is unclear whether Plaintiff is alleging some sort of excessive force by proxy claim or whether he is alleging that the conditions of confinement amounted to cruel and unusual punishment. Under 42 U.S.C. § 1983, a pretrial detainee must show that the force purposefully or knowingly used against him was objectively unreasonable to prevail on an excessive force claim. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2016). A detainee's constitutional claim may only proceed if he or she can establish that the force used is "deliberate – i.e., purposeful or knowing." *Id.* at 2473. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). "A Court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Here, Plaintiff does not present any admissible evidence to establish that inmate Jason Potter assaulted or threatened him at the direction of Mr. Groeger. Plaintiff testified that "[i]t is [his] [personal] opinion that Mr. Groeger recruited Jason Potter as his muscle... to come into [his] cell and threaten [him] and tell [him] to shut the fuck up." (Pl. Dep. at 29/24-30/2). According to Plaintiff's testimony, that personal opinion is based solely on a verbal exchange that occurred between Plaintiff and Mr. Groeger earlier that day. (Pl. Dep. at 30/5-16). However, that verbal exchange did not include any threats by Mr. Groeger. Plaintiff specifically testified that he has no evidence that Mr. Groeger recruited Jason Potter to assault him. (Pl. Dep. at 30/17-19). In addition, Mr. Groeger testified that he did not unlock Plaintiff's cell door to allow another inmate inside, he did not direct an inmate to

assault Plaintiff on his behalf, nor was he aware that the other inmate intended to assault and threaten the Plaintiff. Thus, at most the court is left with an alleged inmate-on-inmate assault which is not attributable to Mr. Groeger under § 1983.

Failing to establish a viable excessive force claim against Mr. Groeger, Plaintiff is left only with the argument that this is a condition of confinement case. Namely, that Mr. Groeger's conduct created a condition of confinement that was objectively unreasonable in regards to Plaintiff's health and safety that amounted to a violation of due process. A claim by a pretrial detainee challenging the conditions of confinement in a state detention facility is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005). In *Burrell*, the Court held that although the Fourteenth Amendment applies to pretrial detainees, "the standard applied is the same as that used in Eighth Amendment cases," thereby adopting the standard of "deliberate indifference" codified in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002).

More recently, however, the Supreme Court altered the standard for pretrial detainees. In *Kingsley v. Hendrickson*, the Court held that the new standard for pretrial detainees is objective unreasonableness evaluated on the basis of the perspective of a reasonable officer on the scene. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Because the Supreme Court left open the question as to whether the Kingsley standard applies to condition of confinement cases brought by pretrial detainees, the Maine District Court has since merged these two standards by recently holding that "a condition of confinement claim against a particular individual defendant often will include an additional, subjective component (proof of deliberate indifference) in order to establish that particular defendant's liability." *McKenney v. Joyce*, 2016 U.S. Dist. LEXIS 148759, *11 n. 4 (D. Me. Oct. 27, 2016) (citing *Suprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005)). "However, where

7

the conduct in question is 'purposefully or knowingly' applied, satisfaction of an objective standard is sufficient to establish liability." *Id.* (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015)).

Plaintiff's argument fails under both the objective and subjective standards described above. Plaintiff cannot meet the objective standard because he cannot establish that Mr. Groeger's conduct was either purposefully or knowingly applied or objectively unreasonable based upon the perspective of an officer in Mr. Groeger's position. As previously noted, Plaintiff cannot provide any admissible evidence that Mr. Groeger allowed another inmate to enter Plaintiff's cell for the purpose of harming the Plaintiff, nor that Mr. Groeger directed the other inmate to harm Plaintiff on his behalf.  While Plaintiff has alleged that Mr. Groeger unlocked his cell door to allow another inmate to enter his cell, Plaintiff subsequently testified that he did not see Mr. Groeger unlock the cell door. (Pl. Dep. at 21/10-16). Plaintiff contends that Mr. Groeger stood ten to twelve feet away from Plaintiff's bed, outside of Plaintiff's door, for six to eight seconds while another inmate assaulted him. (Pl. Dep. at 22/9-12; 23/11-19;). When asked about the assault, Plaintiff testified that he does not remember being slapped in the face, but that he "assume[s] that [Jason Potter] slapped [him] in the face because when [he] woke up the side of [his] face was stinging." (Pl. Dep. at 26/3-8).

To prove that Mr. Groeger's conduct was objectively unreasonable, Plaintiff must show that other officers in Mr. Groeger's position would not have acted the same way under similar circumstances. Based on Plaintiff's sworn testimony, Mr. Groeger's conduct includes standing ten to twelve feet from Plaintiff for six to eight seconds while another inmate entered Plaintiff's cell and threatened him. Mr. Groeger did not speak to or touch Plaintiff during this incident and never physically entered Plaintiff's cell. Plaintiff could not affirmatively testify that Mr. Groeger unlocked his cell door or that inmate Potter actually

8

slapped him. In addition, neither inmate was physically harmed during the brief altercation. Lastly, in contrast to the speculative allegations asserted in Plaintiff's Amended Complaint, Mr. Groeger unambiguously testified that he did not unlock Plaintiff's cell or allow another inmate inside.  Even if Plaintiff's remaining allegations were true, Mr. Groeger's conduct of standing outside of an inmate's door and failing to intervene in a six to eight second dispute between two inmates in which no one was physically injured is not objectionably unreasonable for an officer in Mr. Groeger's position.

Furthermore, assuming the Court includes a subjective component in its analysis, Mr. Groeger's conduct does not meet the subjective standard for deliberate indifference. The Court has adopted "subjective recklessness" as the test for deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825 at 840. Mere inadvertence or negligence does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  The Supreme Court has held that prison officials may not be held liable if they prove that they were unaware of even an obvious risk. *Id.* at 828.

Here, Plaintiff does not allege *any* facts that would corroborate his "personal opinion" that Mr. Groeger had knowledge that inmate Jason Potter planned to enter Plaintiff's cell for the purpose of assaulting and threatening the Plaintiff. Plaintiff's personal opinion is not a fact. Mr. Dixon does not allege that Mr. Groeger had knowledge of or perceived any risk of substantial harm that might exist by allowing another inmate to enter Plaintiff's cell. In fact, Plaintiff testified that he did not even know Jason Potter prior to that day and never spoke to him after that incident. (Pl. Dep. at 29/9-15). Plaintiff presents no evidence beyond mere speculation that Mr. Groeger had knowledge that the other inmate presented *any* risk to Plaintiff's safety, let alone knowledge of an excessive risk.  Without establishing a history of confrontation, threatening behavior, or violence between the two inmates, and that Mr. Groeger was aware of that history, Plaintiff cannot show that Mr.

9

Groeger acted with deliberate indifference and his claims cannot stand. *See Burrell v. Hampshire County*, 307 F.3d at 8.

Plaintiff cannot even affirmatively testify that Mr. Groeger saw the altercation between Plaintiff and the other inmate, only that Plaintiff observed Mr. Groeger standing outside of his cell door for 6 to 8 seconds while the 15 to 30 second incident occurred. Moreover, Plaintiff does not allege that, once underway, the altercation lasted long enough for Mr. Groeger to intercede on Mr. Dixon's behalf or that Mr. Dixon requested that Mr. Groeger intervene. Therefore, based upon the record and undisputed facts, Plaintiff has not presented sufficient evidence to establish that Mr. Groeger was subjectively aware of an excessive risk of harm by inmate Jason Potter or that Mr. Groeger acted with deliberate indifference in failing to respond to or prevent the altercation. Consequently, Plaintiff does not state viable Fourteenth Amendment claim and Defendant Dalton Groeger is entitled to judgment as a matter of law.

### C. Mr. Dixon fails to allege facts sufficient to substantiate a viable First Amendment claim.

Although Mr. Dixon invokes the First Amendment, there are no factual allegations in support of such a claim. While Mr. Dixon does not explicitly state how his First Amendment rights were violated by Mr. Groeger, there is an allusion to retaliation for petitioning the government for redress of grievances. If this is Mr. Dixon's claim, it is measured against a familiar standard:

> To prove a retaliation claim at summary judgment, "a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." [*Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011)]. In the first amendment context, an adverse action must be "more than de minimis," which means the action must be sufficient to chill a person of ordinary firmness in the performance of future first amendment activities. *Pope v. Bernard*, No. 10-1443, 2011 U.S. App. LEXIS 2764, at *4, 2011 WL 478055, at *2 (1st Cir. 2011) (per curiam) (unpublished). The inquiry into

10

> whether an action is sufficiently adverse to support a claim is based on an objective standard rather than a subjective one, such that it is "capable of screening the most trivial of actions from constitutional cognizance." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). ... Acts that cause an inmate to experience discomfort for a few days are considered de minimis. *Starr v. Dube*, 334 Fed. Appx. 341, 342 (1st Cir. 2009). Along the same lines, "[v]erbal threats and name-calling usually are not actionable" under 42 U.S.C. § 1983. *Ellis v. Meade*, 887 F. Supp. 324, 329 (D. Me. 1995) (quoting *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993)).

*Goguen v. Gilblair*, 2013 U.S. Dist. LEXIS 138500, *68-69 (D. Me. June 20, 2013), *aff'd* 2013 U.S. Dist. LEXIS 137410, 2013 WL 5407225 (D. Me. Sept. 25, 2013).

Assuming Mr. Dixon exercised his First Amendment right to petition the Jail for redress of grievances, the Amended Complaint does not suggest any retaliation by Mr. Groeger as a result. Even if the Court credits Mr. Dixon's allegation that Mr. Groeger "confronted" Mr. Dixon about a grievance Mr. Dixon had filed, he does not allege that this confrontation resulted in any adverse consequence for Mr. Dixon or that it in any way impeded his ability to seek redress of grievances. To the contrary, Mr. Dixon alleges that as the result of the "confrontation," he filed yet another grievance. In addition, Mr. Dixon testified that during that "confrontation," Mr. Groeger did not threaten him or physically harm him in any way. (Pl. Dep. at 35/5-6, 35/25-361). Moreover, even if the Court credits Plaintiff's testimony that Mr. Groeger called him "a rat" and told him "he could not tell his way out of this one," those verbal insults are not actionable. Therefore, at most Mr. Dixon describes *de minimis* actions by Mr. Groeger. Absent any alleged action sufficient to chill a person of ordinary firmness in the performance of future First Amendment activities, Mr. Dixon does not state a viable retaliation claim.

### D.  Mr. Dixon's claims fail because Mr. Groeger is protected by qualified immunity.

Mr. Groeger is entitled to judgment on the Plaintiff's claims based on qualified immunity. The doctrine of qualified immunity protects officers from liability for civil

damages under Section 1983 if "their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Mlodzinski v.*

*Lewis*, 648 F.3d 24, 32 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct.

808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)) (internal quotation marks omitted)).  Qualified immunity affords police officers

"immunity from suit and not a mere defense to liability."  *Maldonado v. Fontanes*, 568 F.3d

263, 268 (1st Cir. 2009).  The purpose of qualified immunity, as described by the United

States Supreme Court, is to "give[] government officials breathing room to make reasonable

but mistaken judgments about open legal questions. When properly applied, it protects 'all

but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*,

563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In short,

qualified immunity protects government officials for objectively reasonable decisions, even

if those decisions turn out to be incorrect:

> The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

*Pearson*, 555 U.S. at 231.

The Court employs a two-prong analysis in determining whether a defendant is

entitled to qualified immunity.   The Court examines "(1) whether the facts alleged or shown

by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right

was 'clearly established' at the time of the defendant's alleged violation." *Id.* at 269.  The

Court's second inquiry itself has two parts: the Court asks "(a) whether the legal contours of

the right in question were sufficiently clear that a reasonable officer would have understood

that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski*, 648 F.3d at 32-33 (citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011)).

This inquiry is designed to determine "whether the state of the law at the time would have given a reasonably competent officer 'clear notice that what he was doing was unconstitutional.'" *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011) (quoting *Costa-Urena v. Segarra*, 590 F.3d 18, 29 (1st Cir. 2009)) (internal quotation mark omitted).  It is an objective test:  an officer is not entitled to qualified immunity *only* if "*every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, if "officers of reasonable competence could disagree" on the lawfulness of the action, an officer is entitled to immunity.  *Malley*, 475 U.S. at 341.

Applying the test for qualified immunity articulated by the Supreme Court and the First Circuit, the Plaintiff's claims against Mr. Groeger are barred by qualified immunity. As discussed above, the Plaintiff has failed to present viable constitutional claims under Section 1983. For this reason alone, Mr. Groeger is entitled to immunity.

Even if the Court moves to the second step of the qualified immunity inquiry, the analysis favors Mr. Groeger. Although the right to be free from excessive force, unsafe conditions of confinement, and retaliation for petitioning the government for redress of grievances are clearly established rights, a reasonable correctional officer could disagree as to whether Mr. Groeger's conduct was unlawful. Even if the events alleged by the Plaintiff were true, that Mr. Groeger allowed another inmate to enter Plaintiff's cell while he stood outside of the door for 6 to 8 seconds, and in that time, Plaintiff was assaulted by the other inmate, it is not likely that a reasonable officer would be aware that such conduct violates an

13

inmate's Eighth, or in this case Fourteenth, Amendment rights. Plaintiff presents no facts to support his premise that the assaultive inmate acted at Mr. Groeger's direction. A reasonable officer in Mr. Groeger's position, unaware of any  history of animosity between the two inmates or any excessive danger that the assaultive inmate would present to Plaintiff, would have no reason to believe that the inmate planned to enter the cell and immediately slap and threaten the Plaintiff.  Additionally, assuming for the purposes of this Motion that Mr. Groeger witnessed the assault, it is likely that a reasonable officer would not have time to prevent that assault in the six to eight second he or she stood at the cell door. It is not reasonable to require a correctional officer to predict the actions of inmates who have no combative or aggressive history towards their victim. A reasonable officer would not believe that the actions of opening a cell door, standing outside of it, and failing to prevent an inmate-on-inmate assault that resulted in no physical injuries would give rise to an Eighth or Fourteenth Amendment claim for cruel and unusual punishment or excessive force.

Similarly, a reasonable officer in Mr. Groeger position would not necessarily be aware that confronting Plaintiff about his grievance was a violation of Plaintiff's First Amendment rights. Plaintiff does not allege that Mr. Groeger harmed him or threatened him during that encounter, nor does he allege that Mr. Groeger told him not to file future grievances against him. Plaintiff merely alleges that Mr. Groeger asked him why he filed a grievance against him and Plaintiff immediately told him to get out of his cell, which he did. A reasonable officer would not believe that an attempt at mere conversation with an inmate would violate that inmate's First Amendment rights. Moreover, not every correctional officer would understand that making several derogatory comments to an inmate would be a violation of the inmates First Amendment rights. Therefore, Mr. Groeger is protected by

14

qualified immunity and is entitled to summary judgment on all counts of Plaintiff's

complaint.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Mr.

Groeger is entitled to summary judgment on all Counts of Plaintiff's Complaint.

Dated at Portland, Maine this 27th day of March, 2017.

> Attorneys for Defendant Dalton Groeger
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906

> BY:   /s/ Laura A. Berry
>        Laura A. Berry

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017, I electronically filed **Defendant's Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system.  In addition, I hereby certify that today I have served a copy of this document on the Plaintiff by first class mail, postage prepaid, to the following address:

> Richard Dixon, Jr., MDOC# 51584
> Maine Correctional Center
> 17 Mallison Falls Road
> Windham, ME 04062

Dated at Portland, Maine this 27th day of March, 2017.

> Attorneys for Defendant Dalton Groeger
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906

> BY:   /s/ Laura A. Berry
>        Laura A. Berry