UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD ALLEN DIXON, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:16-cv-00178-NT |
| | ) | |
| DALTON GROEGER, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff Richard Allen Dixon, Jr., alleges that Defendant Dalton Groeger violated his constitutional rights while Plaintiff was detained at the York County Jail. Specifically, Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was assaulted by another inmate, and that when he initiated grievance proceedings, Defendant retaliated against him in violation of the First Amendment. (Am. Compl. ¶ 1, ECF No. 4.)

The matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 32.) Following a review of the record and the parties' summary judgment filings, I recommend the Court grant in part and deny in part the motion.

### FACTS

Plaintiff, presently confined at the Maine Correctional Center, was detained at York County Jail from July 25, 2015, to September 19, 2015. (Defendant's Statement of Material Facts ("DSMF") ¶ 1, ECF No. 33; Plaintiff's Statement of Material Facts

("PSMF") ¶ 1, ECF No. 43.) Defendant was a correctional officer at the York County Jail at all times relevant to this action. (DSMF ¶ 2; PSMF ¶ 2.)

On August 30, 2015, Defendant was assigned to work in the unit of the Jail to which Plaintiff was confined. (DSMF ¶ 3; PSMF ¶ 3.) Throughout that day, Defendant participated with certain inmates in throwing around paper balls. (PSMF ¶ 5.) Plaintiff eventually told Defendant that he needed to start acting like an officer. (*Id.* ¶ 6.) Defendant responded with an expletive. (*Id.* ¶ 7.) Later that night as Plaintiff was going to his cell, he took a blue glove from Defendant's desk; Defendant told Plaintiff to put it back and to grow up. (*Id.* ¶ 9.)

Defendant was the only officer on duty in the unit that evening. (PSMF ¶ 4.) Plaintiff went to bed around 10:30 p.m. (*Id.* ¶ 10.) According to Plaintiff, without warning, he felt his face stinging - Plaintiff states it felt like he had been slapped awake - and an inmate was holding a pencil to his neck. (*Id.* ¶¶ 11 – 12; DSMF ¶¶ 4, 5.) The inmate informed Plaintiff that if he did not stop "running his mouth," the inmate would harm Plaintiff. (PSMF ¶ 12.)

Plaintiff did not see Defendant unlock his cell door, nor hear Defendant unlock the cell door. (DSMF ¶¶ 6 – 7.) Plaintiff, however, saw Defendant standing at the door to the cell, approximately ten feet away, holding the cell door open and watching. (PSMF ¶ 13.)

The incident involving the other inmate lasted only seconds. (DSMF ¶¶ 8, 12.) The pencil did not penetrate Plaintiff's skin. (*Id.* ¶ 10.) Plaintiff was not physically injured during the incident and did not seek medical attention. (*Id.* ¶ 11.) Defendant did not enter Plaintiff's cell or speak to Plaintiff. (*Id.* ¶ 13.) Plaintiff did not know the other inmate

prior to the incident. (*Id.* ¶ 14.) Plaintiff has no direct evidence that Defendant "recruited" the inmate to assault Plaintiff. (*Id.* ¶ 15.)[1]

On September 1, 2015, Plaintiff filed a grievance regarding the incident. (PSMF ¶ 15.) On September 8, Defendant entered Plaintiff's cell and confronted him about the grievance. (*Id.* ¶ 16.) Plaintiff told Defendant to leave the cell three time before Defendant left. (*Id.* ¶ 17.) Defendant did not physically harm Plaintiff in any way when he asked him about the grievance on September 8. (DSMF ¶ 20.)[2]

Because Defendant had confronted Plaintiff about the grievance, on September 11, 2015, Plaintiff filed a second grievance against Defendant. (*Id.* ¶ 21.) Following the filing of the grievances, the jail continued to assign Defendant to escort Plaintiff on daily trips to medical, and during one or more of the trips, Defendant called Plaintiff a rat and said he would not be able to "tell his way out of this one." (*Id.* ¶ 19.)

Plaintiff asserts that Defendant also told him he would "get what [he] deserved" and would "get what was coming to [him]." (Dixon Aff. ¶ 7, ECF No. 43-1.) Plaintiff also asserts that Defendant "continued to make intimidating comments to me." (PSMF ¶ 19.) Defendant objects to some of Plaintiff's statements because they are new and/or contradict Plaintiff's deposition testimony. (Def.'s Reply Statement ¶ 19, ECF No. 45.) Plaintiff

---

[1] According to Defendant, he did not unlock Plaintiff's cell door to allow an inmate to enter. (DSMF ¶ 22.) He also did not direct any inmate to harm or threaten Plaintiff, nor did he see or hear an inmate assault or threaten Plaintiff on August 30, 2015. (*Id.* ¶¶ 23 – 24.) Defendant states he had no knowledge of the inmate exhibiting any aggressive or threatening behavior toward other inmates. (*Id.* ¶ 26.)

[2] Defendant acknowledges asking Plaintiff on September 8, 2015, why Plaintiff filed a grievance against him, but states he did not take any action toward Plaintiff in order to deter him from filing further grievances against him. (*Id.* ¶ 27.)

3

contends that he "took a full revocation and probation to get out of York County Jail" because he was afraid of what Defendant might do.[3]  (DSMF ¶ 20.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'"  *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.  *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015).  If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim.  *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal

---

[3] Defendant's motion reveals that Plaintiff was detained on a probation violation charge at the time in question.  Evidently, Plaintiff maintains that he admitted to the probation violation in part because he understood he would not be held in York County Jail following the judgment revoking his probation.

purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**DISCUSSION**

Defendant argues that Plaintiff's failure to comply fully with Local Rule 56 justifies entry of summary judgment in favor of Defendant; that Plaintiff's mistaken assertion of an Eighth Amendment claim rather than a Fourteenth Amendment claim requires dismissal of the action; that Defendant is entitled to summary judgment on the merits of the force-related/punishment claim because the facts do not support an inference that Defendant directed or permitted an inmate to enter Plaintiff's cell to assault or threaten Plaintiff; that Defendant is entitled to summary judgment on the merits of the First Amendment retaliation claim because the record lacks evidence of retaliation; and that Defendant is protected on all claims by the doctrine of qualified immunity.

A. **Non-compliance with Local Rule 56**

Local Rule 56 sets forth a procedure for presenting and challenging factual assertions in support of or in opposition to a motion for summary judgment. For example, Local Rule 56 provides that a party who opposes a motion for summary judgment must file an opposing statement of material facts that admits, denies, or qualifies the statements offered by the moving party. D. Me. Loc. R. 56(c). In this case, Plaintiff filed a competing statement of material facts in which he presented his own version of the facts, but he did not admit, deny, or qualify each of the statements offered in Defendant's statement of material facts. Plaintiff's statement includes citations to record evidence.

A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27 – 28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007). In the context of summary judgment, however, this Court has observed that an inmate's nonconforming summary judgment submission should be reviewed by the Court and that the facts set forth in a verified complaint or inmate affidavit should be considered. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007). Plaintiff's partial compliance with Local Rule 56, including his statement of facts supported by citations to the record, reflects substantial compliance in accordance with the reasoning of *Clarke*. I am satisfied that Plaintiff's partial compliance and the relatively limited record allow the Court to assess fairly the merits of the parties' substantive summary judgment arguments.

**B.    Cruel and Unusual Punishment Claim**

As alleged, at the time of the assault by the inmate, Defendant was a state actor. Plaintiff's federal claim regarding the assault, therefore, arises under 42 U.S.C. § 1983 and the Fourteenth Amendment. "The rights enforceable under [42 U.S.C.] § 1983 emanate through the Fourteenth Amendment and they include substantive and procedural due process, the equal protection of the laws, and those rights in the Bill of Rights incorporated by the Due Process Clause, including rights protected by the First, Second, Fourth, and Eighth Amendments." *Harpswell Coastal Acad. v. Maine Sch. Admin. Dist. No 75 (Topsham)*, No. 2:15-cv-00454-JAW, 2015 WL 7194934, at *4 (D. Me. Nov. 16, 2015).

Because Plaintiff was awaiting a hearing on a probation revocation charge, Defendant concedes that Plaintiff should be considered a pretrial detainee.[4] (Motion at 5.) As a pretrial detainee, Plaintiff was protected by the Due Process Clause "from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989)). The use of force can be considered "punishment" if it was not "rationally related to a legitimate nonpunitive governmental purpose" or was "excessive in relation to that purpose." *Id.* at 2473 – 74 (quoting *Bell v. Wolfish*, 490 U.S. 520, 561 (1979)).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 2473 (explaining that the identified considerations are not exclusive). Although the record establishes that Defendant did not personally use force against Plaintiff, the claim against Defendant would be actionable if the evidence could support a finding that Defendant was in part responsible for the use of force. More specifically, because the use of force could be viewed as objectively unreasonable and thus punishment, Plaintiff's claim would proceed beyond summary judgment if a fact finder could reasonably conclude that the force was applied at the direction of Defendant or with Defendant's involvement.[5]

---

[4] *See also Smith v. Harris Cty.*, 198 F.3d 241 (5th Cir. 1999).

[5] Defendant also argues that if the claim was considered a conditions of confinement case, Plaintiff would be required to produce, but has not produced, evidence of a subjective state of mind that meets the deliberate indifference standard. (Motion at 7.) I do not construe Plaintiff's claim as a conditions of confinement claim. Plaintiff instead contends that Defendant purposefully and knowingly allowed the other inmate into

7

In this case, when viewed most favorably to Plaintiff, a fact finder could find the following facts based on the direct record evidence: that on the day of the assault, the communications between Plaintiff and Defendant were to some degree confrontational; that through his comments to Defendant, Plaintiff had been disrespectful to Defendant; that Defendant had access to Plaintiff's cell; that another inmate entered Plaintiff's cell late at night and assaulted Plaintiff; that the inmate also threatened Plaintiff that he would be harmed if Plaintiff did not stop "running his mouth;" and that at the time of the assault, Defendant was just outside the cell, holding the door open to the cell, observing the inmate's conduct. Given the evidence that at the time Defendant was holding open the cell door, a fact finder could also reasonably infer that Defendant was aware of and permitted, if not facilitated, the inmate's conduct. Defendant's argument, therefore, that the record lacks evidence to support a finding that Defendant violated Plaintiff's Fourteenth Amendment rights, is unavailing.

Defendant's request for summary judgment based on qualified immunity is also not convincing. Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau*

---

Plaintiff's cell after Plaintiff had gone to bed. As Defendant observes, "where the conduct in question is 'purposefully or knowingly' applied, satisfaction of an objective standard is sufficient to establish liability." (*Id.* at 7 – 8 (quoting *McKenney v. Joyce*, No. 2:16-cv-00412-NT, 2016 WL 6304678, at *4 n.4, 2016 U.S. Dist. LEXIS 148759, at *11 n.4 (D. Me. Oct. 27, 2016) (Report and Recommended Decision))).

8

*v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "This strain of immunity aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo*, 973 F.2d 39, 42 (1st Cir. 1992)).

As explained above, the record, when viewed most favorably to Plaintiff, could support the determination that Defendant permitted, and possibly facilitated, the assault of Plaintiff by another inmate. Under the clearly established law at the time, such conduct by a corrections officer, if proven, would constitute a constitutional deprivation. Defendant, therefore, is not entitled to summary judgment based on qualified immunity.

### C. Retaliation Claim

To prevail on a claim of first amendment retaliation, an inmate must demonstrate (1) that the inmate engaged in conduct protected by the First Amendment; (2) that the defendant took adverse action against the inmate because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter an inmate of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

In this Circuit, the filing of a prison grievance is considered protected conduct. *Hannon*, 645 F.3d at 48 ("The plaintiff, in filing his own grievances and legal actions,

plainly engaged in protected activity."); *Hightower v. Vose*, 95 F.3d 1146 (Table), No. 95-2296, 1996 WL 516123, *1 (1st Cir. Sept. 12, 1996). The issue is whether Defendant's comments following Plaintiff's grievance activity were more than de minimis, i.e., whether they were sufficiently serious to deter an inmate of ordinary firmness from exercising his right to petition for redress of grievance. "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013).

Several circuit courts of appeals have held that harassment and threats can constitute the necessary adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *Thaddeus-X*, 175 F.3d at 398; *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994); *Ford v. Palmer*, 539 Fed. App'x 5, 7 (2d Cir. 2013). Harassment, however, is not always actionable. *Brown v. Lewis*, 865 F. Supp. 2d 642, 648 (E.D. Pa. 2011). For example, a verbal insult alone does not constitute adverse action. *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 340 (S.D.N.Y. 2015) (citing inter alia *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (collecting S.D.N.Y. cases concerning verbal threats)); *Briggs v. Wall*, No. 1:09-cv-00456, 2009 WL 4884529, at *5 (D.R.I. Dec. 16, 2009) ("The alleged vague threat of future unspecified discipline … does not constitute 'adverse action'"). On the other hand, death threats and threats of serious physical harm generally suffice. *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (concluding that the statement, "We'll be ramping things up," was too vague to state a claim, where the complaint provided

no context to give the statement chilling effect, such as a "history of abuse or a pattern of threats" or an accompanying "menacing gesture").

Here, Defendant's reference to Plaintiff as a "rat" and Plaintiff's assertion that Defendant in essence told him he would not be able to talk is way out of the situation are the only facts of record that could support a retaliation claim. Plaintiff also asserts that Defendant said Plaintiff would "get what [he] deserved" and would "get what was coming to [him]" (Dixon Aff. ¶ 7, ECF No. 43-1), and that Defendant "continued to make intimidating comments to me." (PSMF ¶ 19.) Plaintiff's statements, however, are inconsistent with and contrary to his deposition testimony. During his deposition, when asked whether Defendant made any threats to him when Defendant appeared at Plaintiff's cell to discuss the grievance, Plaintiff replied, "no." (Dixon Dep. at 35, ECF No. 34.) In addition, when asked about any alleged intimidation while Defendant escorted Plaintiff on his daily trips to medical, Plaintiff testified: "He just called me a rat, you know, like, oh, you can't tell your way out of this one, just stuff like that, just ignorant statements." (Dixon Dep. at 39.) Despite being asked for any other specific statements made by Defendant, Plaintiff provided none. (*Id.*)

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4 (1st Cir. 1994). Plaintiff's affidavit includes statements that were not only not included in his deposition testimony, but were plainly designed to address Defendant's contention that Defendant did not

11

threaten Plaintiff. Under *Colantuoni*, Plaintiff's affidavit statements are properly disregarded. Defendant's statements, as recounted by Plaintiff during his deposition, do not constitute adverse action that would deter an inmate of ordinary firmness from exercising the inmate's First Amendment rights. Plaintiff thus cannot sustain a First Amendment retaliation claim.

Even if the Court were to conclude that the statements were potentially actionable, the statements did not violate a clearly established constitutional standard separating non-actionable harassment from actionable threats. Defendant, therefore, would entitled to qualified immunity on Plaintiff's retaliation claim.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part and deny in part Defendant's Motion for Summary Judgment. (ECF No. 32.) I recommend the Court enter judgment in Defendant's favor on Plaintiff's retaliation claim, and deny the motion as to Plaintiff's claim under the Fourteenth Amendment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated this 2nd day of August, 2017.

/s/ John C. Nivison
U.S. Magistrate Judge